NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                          :

In re:                                                :          Chapter 7
                                                        :

Heather Jeanne Lindsay,                    :          Case No. 20-10339-JLG
                                                        :

                    Debtor.                     :
                                                        :
------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER GRANTING NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(D)(1) AND (4).

A P P E A R A N C E S :

HEATHER JEANNE LINDSAY
*Pro se*

HILL WALLACK LLP
*Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing*
21 Roszel Road
Princeton, NJ 08540
By:    Raquel Felix, Esq.

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

NewRez LLC d/b/a Shellpoint Mortgage Servicing in its capacity as servicer for The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2007-19, Mortgage PassThrough Certificates, Series 2007-19 ("Movant") has moved this Court (the "Stay Motion") for an Order: (i) pursuant to 11 U.S.C. § 362(d)(4) such that any and all future filings under the Bankruptcy Code during the next two years by the debtor herein, Heather James Lindsay (the "Debtor") and non-debtor Anthony Consiglio ("Mr. Consiglio") or any other person or entity with an interest in the real property commonly identified as 81 High Clear Drive, Stamford, Connecticut 06905 (the "Property") shall not operate as a stay as to Movant's enforcement of its rights in and to the Property; (ii) pursuant to 11 U.S.C. § 362(d)(1), vacating the automatic stay imposed in this case under 11 U.S.C. § 362(a) as to Movant's interest in the Property; (iii) waiving the stay invoked pursuant to the Federal Rules of Bankruptcy Procedure 4001(a)(3); and (iv) for such other relief as the Court may deem just and proper.[1] The Debtor opposes the Stay Motion.[2] Mr. Consiglio was served with the Stay Motion but did not respond to it and has not appeared herein. For the reasons stated herein, the Court grants the Stay Motion.

---

[1]   *See* Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and (4) [ECF No. 22]; Reply To Debtor's Response and Objection To Request for Relief From the Automatic Stay [ECF No. 89]. The designation "ECF No. ___" refers to a document filed on the electronic docket in the Debtor's chapter 7 bankruptcy case (No. 20-10339-JLG).

[2]   *See* Debtor's Response and Objection to Request for Relief From Stay [ECF No. 80] and Debtor's Response and Objection to Request for Relief From Stay [ECF No. 81]. These documents are identical except that ECF No. 81 includes the Debtor's "wet" signature, a January 6, 2020 Affidavit of Heather Lindsey filed in the Stamford - Norwalk Judicial District of the Connecticut Superior Court, and a Certificate of Service. Accordingly, the Court will treat ECF No. 81 as the operative objection to the Stay Motion (the "First Response"). The Debtor also filed the following documents that, in part, included opposition to the Stay Motion: Debtor's Reply to Objection to Loss Mitigation and Debtor's Motion for Continuance of These Proceedings Due to COVID-19 Closures and Debtor's Motion to Have a Mediator Appointed for Loss Mitigation and Motion for Extension of Time to File an Objection to the Motion to Lift Stay Filed by Bank of NY/Shellpoint and Recusal of Judge Garrity [ECF No. 96] (the "Second Response"), and the "Notice of Mortgagor" [ECF No. 100].

**Background**

On or about May 7, 2007, Mr. Consiglio executed and delivered and otherwise became obligated to the lender with respect to that certain note (the "Note"), and mortgage (the "Mortgage", together with the Note, the "Loan Documents") dated May 7, 2007 in the original principal amount of $500,000.00. Pursuant to the terms and conditions of the Loan Documents, all obligations thereunder (collectively, the "Obligations") are secured by the Property and upon the failure of any obligor to cure any default thereunder, which includes non-payment of amounts due, the lender is entitled to accelerate the loan balance and foreclose on the Property. Mr. Consiglio defaulted under the Loan Documents. Thereafter, the lender commenced a foreclosure action against Mr. Consiglio (and others), as defendants, in the Connecticut State Superior Court, Judicial District of Stamford (the "State Court"), titled *The Bank of New York v. Consiglio, Andrew, et al*, Docket No: FST-CV08-5006978-S ("Foreclosure Action"). On or about June 2, 2008, the State Court issued an Order granting Judgment of Strict Foreclosure against the defendants and fixed June 24, 2008 as the Law Day for the owner of the equity of redemption (the "Foreclosure Judgment"). Mr. Consiglio did not redeem the Property and has not made any Mortgage payments since he defaulted under the Loan Documents. The Debtor is not obligated under the Loan Documents. However, on August 8, 2016, Mr. Consiglio executed a Quitclaim Deed which transferred his interests in the Property to the Debtor.

On or about April 2, 2018, at the behest of the Movant, the State Court issued an Order fixing May 22, 2018 as the Law Day under the Foreclosure Action. On May 22, 2018, Mr. Consiglio and the Debtor, both acting pro se, jointly filed a petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "CT

Bankruptcy Court").³ The filing of the petition automatically stayed the Foreclosure Action. The court dismissed the case on July 19, 2018, based on the debtors' failure to prosecute the case.⁴ Thereafter, the Movant obtained a new Law Day of September 25, 2018. On September 24, 2018, the Debtor, acting pro se, filed her own petition under chapter 13 of the Bankruptcy Code in the CT Bankruptcy Court.⁵ The commencement of the case automatically stayed the Foreclosure Action. The court dismissed the case on December 21, 2018, after the Debtor failed to comply with court-ordered disclosure.⁶ In an effort to delay the Movant from obtaining a new Law Date, on October 9, 2018, the Debtor, acting pro se, filed another petition under chapter 13 in the CT Bankruptcy Court, and on June 17, 2019, Mr. Consiglio, acting pro se, filed a chapter 7 petition in the CT Bankruptcy Court.⁷ The court dismissed both cases within months of the respective filing dates.⁸

The State Court eventually reset the Law Day for February 4, 2020. On that day (the "Petition Date") the Debtor, acting pro se, commenced this voluntary case under chapter 7 of the Bankruptcy Code. In the Petition, the Debtor represents that she lives at 63 E. 9th Street, Apt. 11 L, New York, New York. *See* Petition, Part I, ¶ 5. She identifies her mailing address as 81 High Clear Drive, Stamford CT (i.e., the Property). The Debtor failed to file any Schedules (Official Forms 106 A/B – J) (the "Schedules"), a Summary of Assets and Liabilities (Official Form

---

³ *See In re Andrew Consiglio and Heather Jeanne Lindsay*, No. 18-50647 (Bankr. D. Conn. May 22, 2018).

⁴ *See id.* Order Dismissing Case (June 22, 2018) [ECF No. 15].

⁵ *See In re Andrew Consiglio and Heather Jeanne Lindsay*, No. 18-51236 (Bankr. D. Conn. September 24, 2018).

⁶ *See id.* Order Dismissing Case (December 21, 2018) [ECF No. 47].

⁷ *See In re Heather Jeanne Lindsay*, No. 18-51310 (Bankr. D. Conn. October 9, 2018); *In re Andrew Consiglio*, No. 19-50817 (Bankr. D. Conn. June 17, 2019).

⁸ *See Heather Jeanne Lindsay*, Order (November 26, 2018) [ECF No. 15]; *Andrew Consiglio*, Order Dismissing Case (July 2, 2019) [ECF No. 15].

106Sum) (the "Asset/Liability Summary") or any Statements[9] (collectively with the Schedules and Asset/Liability Summary, the "Schedules/Statements") with the Petition.  As an accommodation to the pro se Debtor, and in light of the restrictions imposed by state and local governments in response to the COVID19 pandemic, the Court granted the Debtor numerous extensions to file her Schedules/Statements.  She filed them on October 27, 2020.[10]

The Movant filed the Stay Motion on April 21, 2020.  It is undisputed that as of that date, the amount due under the Note and Mortgage, including principal, interest, and costs, totaled approximately $1,158,083.88, and that the estimated fair market value of the Property was $480,000.  As filed, the Stay Motion was returnable on May 19, 2020.  With the Movant's consent, and, again, to accommodate the pro se Debtor in light of the COVID19 pandemic, the Court granted the Debtor numerous adjournments of the hearing date.  On January 21, 2021, the Court heard argument on the Stay Motion.

## Discussion

In the Stay Motion, the Movant seeks relief from the automatic stay under section 362(d)(1) and section 362(d)(4) of the Bankruptcy Code. Under section 362(d)(1):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest

---

[9]  The "Statements" consist of: Statement of Intention (Official Form 108), Statement of Financial Affairs (Official Form 107), and Statement of Monthly Income (Official Form 122A-1).

[10]  *See* ECF No. 72 (Schedules & Asset/Liabilities Summary); ECF No. 73 (Statements).

4

*See* 11 U.S.C. § 362(d)(1).  The party seeking relief from the automatic stay has the initial burden of establishing "cause."  *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). "The term 'cause' is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis."  *Manhattan King David Rest. Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993) (citing *Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir.1990)).  Once the movant establishes a prima facie case of cause to lift the stay, the burden shifts to the debtor.  *Id.* (citation omitted).   Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." 11 U.S.C. § 362(g)(1); *see also Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir.1990)).  "The rationale for the burden of proof rule is that the automatic stay is intended only to shift the initiative to the creditor to bring the issue before the Bankruptcy Court, and not to create any new right in the debtor to stay proceedings. . . . This burden includes not only the burden of going forward with the evidence but also the burden of ultimate persuasion."  *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

It is well settled that the "continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay" where "the failure to make monthly payments corresponds with a nonexistent equity cushion."  *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004) (quoting *Equitable Life Assurance Society of the United States v. James River Assocs. (In re James River Assocs.)*, 148 B.R. 790, 797 (E.D. Va. 1992)). That is the case here, as Mr. Consiglio has not made a mortgage payment in years, and there is no equity in the Property.  Accordingly, the Movant has established cause under section 362(d)(1) for granting relief from the automatic stay.  The Debtor does not dispute that

5

she lacks equity in the Property and does not contend that she can adequately protect the Movant's interest in the Property.  Rather, in opposing the Stay Motion, the Debtor (i) challenges Movant's standing to seek stay relief, (ii) asserts that the Stay Motion is procedurally defective because the Movant never provided her with notice of the Stay Motion, and (iii) contends that the State Court lacked subject matter jurisdiction to enter the Foreclosure Judgment. *See* First Response at 2-4; Second Response at 9-12.   Below, the Court reviews those matters.

As to the first point, the Debtor simply asserts that the Movant lacks standing to appear before the Court as a "new servicing company."  *See* First Response at 4 ("Relief from Stay is for parties where there is no question as to the Rights of Title and Interest. . . . They are without standing to ever appear before the Court. This new "servicing" company Attorney is trying to obtain possession of my property through Fraud, attempting to exercise control over the estate and is therefore subject to the Automatic Stay.").  *See also* Second Response at 8 ("Also, the standing of the movant is rebutted by me . . ."). There is no merit to that contention because Movant has demonstrated that it is in possession of the Note and Mortgage, that have been endorsed in blank.  *See* Motion, Ex. A, p. 4.  As such, it has demonstrated that it has standing to act herein.  *See U.S. Bank, Nat. Ass'n v. Schaeffer,* 160 Conn. App. 138, 150, 125 A.3d 262, 270 (2015) ("If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party."). *See also Costello v. Wells Fargo Bank National Association*, No. 16-cv-1706 (VAB), 2017 WL 3262157, at *11 (D. Conn. July 31, 2017) ("When a person or entity has possession of a note endorsed in blank, it becomes the valid

holder of the note. Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note.") (citing *U.S. Bank, Nat. Ass'n v. Schaeffer*, 160 Conn. App. 138, 146, 125 A.3d 262, 268 (2015)); *In re Fiano*, No. 15-21410 (AMN), 2019 WL 4686559, at *7 (Bankr. D. Conn. September 25, 2019) ("Generally, in order to foreclose a mortgage, a party must, 'be entitled to enforce the promissory note that is secured by the property.... [a party's] possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action.'") (quoting *Bank of America, N.A. v. Kydes*, 183 Conn. App. 479, 487, 193 A.3d 110, 116, cert. denied, 330 Conn. 925, 194 A.3d 291 (2018)) (alterations in the original).

There is no merit to the Debtor's second argument because the Movant filed the Stay Motion on the Court's electronic docket, together with a Certificate of Service showing that it caused a copy of the Stay Motion to be mailed to the Debtor at both addresses listed in the Debtor's Petition.[11]  Further, the Debtor has regularly appeared before this Court on hearings regarding the Stay Motion,[12] including at the argument on the Stay Motion, and after receiving multiple extensions of time to respond to the Stay Motion, the Debtor filed multiple objections to the Stay Motion.

In support of the third prong of her objection to the Movant's request for relief under section 362(d)(1), the Debtor asserts that the Court should not give effect to the Foreclosure Judgment because, as it relates to Mr. Consiglio, it is a default judgment, and because the State

---

[11]    *See* Petition, Part I, ¶ 5 [ECF No. 1]; Certificate Service for Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and (4) [ECF No. 22-7].

[12]    *See* Minutes of Proceedings, July 14, 2020 [ECF No. 45], Minutes of Proceedings, July 14, 2020 [ECF No.47], Notice of Hearing, September 9, 2020 [ECF No. 67], and Minutes of Proceedings, October 28, 2020 [ECF No.75].

7

Court lacked subject matter jurisdiction to hear and resolve the Foreclosure Action because the plaintiff failed to comply with the Connecticut Emergency Mortgage Assistance Program and Connecticut mortgage foreclosure standing programs, including disclosure of Federal loss mitigation programs. *See* Second Response at 9-10.  In essence, the Debtor is asking this Court to review the merits of the Foreclosure Judgment.  However, by application of the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to do so.  That doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Together, those cases stand for the proposition that lower federal courts lack subject matter jurisdiction to sit in appellate review of state court judgments.  *McKitchen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2005).  In essence, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and objection to those judgments." *Exon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S 280, 28 (2002).  In *McKitchen v. Brown*, the Second Circuit identified four elements that must be satisfied in order for *Rooker-Feldman* to apply:

> First, the federal court plaintiff must have lost in state court.
>
> Second, the federal plaintiff must complain of injuries caused by a state court judgment.
>
> Third, the plaintiff must invite district court review and rejection of that judgment.
>
> Fourth, the state court judgement must have been rendered before the district court proceedings commented.

*McKitchen v. Brown*, 481 F.3d at 96-97 (citing *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

The case of *In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010) is instructive on the application of the *Rooker-Feldman* doctrine herein. There, prepetition, after the entry of a judgment of foreclosure (the "Ward Foreclosure Judgment") the creditor sold the debtor's property at the foreclosure sale. When the successful purchaser sought stay relief in the bankruptcy case to proceed to evict the debtor from the property, the debtor opposed the motion by challenging the validity of the Ward Foreclosure Judgement. The debtor argued that the judgment was flawed because: (i) the plaintiff did not produce the original note in the state court action, (ii) the mortgage was rescinded, (iii) the plaintiff in the action did not exist, and (iv) everything in the foreclosure action was done improperly and under the table. *In re Ward*, 423 B.R. at 27. Chief Judge Craig overruled the objection and found that by application of the *Rooker-Feldman* doctrine, she lacked subject matter jurisdiction to disregard the Ward Foreclosure Judgment. In part, she stated:

> The *Rooker-Feldman* doctrine applies in this case because the Debtor lost in the state foreclosure action, the [Ward] Foreclosure Judgement was rendered before the Debtor commenced this case and the Debtor seeks this Court's review of the [Ward] Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay. The injury complained of, i.e., the foreclosure sale to the Purchaser, was "caused by" the [Ward] Foreclosure Judgement because the foreclosure sale would not have occurred "but for" the [Ward] Foreclosure Judgment. Accordingly, the *Rooker-Feldman* doctrine does not permit this Court to disregard the [Ward] Foreclosure Judgement.

*In re Ward*, 423 B.R. at 28 (citations omitted).

Here, as in *Ward,* the application of the *Rooker-Feldman* doctrine bars this Court's review of the Foreclosure Judgment because Debtor lost in the State Court, the Foreclosure Judgment was rendered prior to the Petition Date, and Debtor seeks this Court's review of the Foreclosure Judgment in the context of her objection to the Stay Motion. The injury complained of, i.e., threatened transfer of ownership of the Property, was "caused by" the Foreclosure

Judgement because the transfer sale cannot occur "but for" the Foreclosure Judgment. Accordingly, application of the *Rooker-Feldman* doctrine bars this Court from reviewing the Foreclosure Judgement. *See In re Parade Place, LLC*, No. 13-13160 (MG), 2014 WL 292181, at *5 n.5 (Bankr. S.D.N.Y. January 27, 2014) ("Courts have applied Rooker–Feldman where a party seeks to set aside a foreclosure judgment." (citing *In re Ward*, 423 B.R. 22, 27-28 (Bankr. E.D.N.Y. 2010)); *In re Allard*, No. 18-14092 (MG), 2019 WL 4593854, at *3 (Bankr. S.D.N.Y. Sept. 20, 2019). The doctrine applies even if the Foreclosure Judgment is a default judgment as it relates to Mr. Consiglio, as courts have repeatedly applied *Rooker–Feldman* to state court default judgments. *See, e.g., Neshewat v. Salem,* 194 Fed.Appx. 24 (2d Cir. 2006) (unpublished) (affirming District Court decision that it lacked jurisdiction under *Rooker–Feldman* over state court default judgment); *Ballyhighlands, Ltd. v. Bruns,* 182 F.3d 898 (2d Cir.1999) (unpublished) ("*Rooker–Feldman* applies to default judgments just as it does to other types of judgments.").

Even if this Court had jurisdiction to consider that matter, principles of *res judicata* also apply here to bar the Court's review of the Foreclosure Judgment. "*Res judicata* (claim preclusion) is an equitable doctrine which bars the relitigation of claims already litigated, or the litigation of claims which could have been litigated, between the same parties (or parties in privity with them) in the current litigation as in a prior litigation to judgment by a Court of competent jurisdiction." *In re Albanes*, 560 B.R. 155, 169 (Bankr. D. N.J. 2016) (dismissing with prejudice adversary complaint that contested validity of mortgage and debt after state court entered judgment of foreclosure on grounds of *res judicata* and the *Rooker-Feldman* doctrine).

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, this Court must apply the *res judicata* standard from the state from which the underlying judgment is taken. *In re Albanes*, 560 B.R. at 169 (citing 28 U.S.C. § 1738 and *Marrese v. American Academy of Orthopaedic*

10

*Surgeons*, 470 U.S. 373, 380 (1985)). *See also In re Ward*, 423 B.R. at 28 ("To determine the preclusive effect of a state court decision, a federal court must apply the standard used by the state in which the decision was rendered.") (citations omitted). Under Connecticut law, "[a] former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. The transactional test adopted by the Connecticut courts measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *See Legassey v. Shulanksy*, 28 Conn. App. 653, 656, 611 A.2d 930, 932 (1992).[13] "The appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity* to litigate the matter in the earlier proceeding." *Joe's Pizza, Inc. v. Aetna Life and Cas. Co.*, 236 Conn. 863, 872, 675 A.2d 441, 446, (1996) (emphasis in original).

The elements of *res judicata* are satisfied in this case. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (Once an order becomes final, regardless of any challenge to jurisdiction that may have been made, it is "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.") (internal quotations and citations omitted). *See also Matter of Johnson*, 149 B.R. 284, 287 (Bankr. D. Conn. 1993) ("a bankruptcy court's equitable powers do not permit it to disregard the preclusive effect of a state-court default judgment where the rendering court had jurisdiction and the judgment was obtained by a creditor without fraud or collusion."); *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007) ("*Res judicata* does not require the

---

[13] "Judgments based on the following reasons are not rendered on the merits: want of jurisdiction; pre-maturity; failure to prosecute; unavailable or inappropriate relief or remedy; lack of standing." *Legassey v. Shulansky*, 28 Conn. App. 653, 658, 611 A.2d 930, 933 (1992) (citing 2 E. Stephenson, Connecticut Civil Procedure § 354d (2d Ed.)).

11

precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim. . . . That is why it has long been the law that default judgments can support *res judicata* as surely as judgments on the merits."); *In re Novak*, 37 B.R. 31, 32–33 (Bankr. D. Conn. 1983) (Connecticut law recognizes a default judgment as a final judgment).

Accordingly, based on the foregoing, the Court overrules the Debtor's objection to the Movant's request for relief under section 362(d)(1) of the Bankruptcy Code. As explained below, the Court also overrules the Debtor's objection to the Movant's claim for relief under section 362(d)(4) of the Bankruptcy Code. Under that section, the Court can grant relief

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of a petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>>
>> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4). By application of section 362(b)(20), if a movant obtains relief under section 362(d)(4), the automatic stay will not apply to the real property at issue in future

12

bankruptcy filings for a two-year period. *See* 11 U.S.C. § 362(b)(20).[14] *See also In re O'Farrill*, 569 B.R. 586, 591 (Bankr. S.D.N.Y. 2017) (noting that by application of § 362(b)(20), relief granted under section 362(d)(4) "halts the automatic stay from applying to the real property in future bankruptcy filings for a period of 2 years.").

To obtain stay relief under section 362(d)(4), Movant must prove that (i) the Debtor engaged in a scheme, (ii) the object of the scheme is to "delay, hinder or defraud" Movant; and (iii) the scheme involved either the transfer of property without Movant's consent or court approval, or multiple filings affecting the Premises. *See* 11 U.S.C. § 362(d)(4); *see also In re McKenzie*, No. 19-10130, 2019 WL 1750910, at *2 (Bankr. S.D.N.Y. March 25, 2019) ("Under § 362(d)(4), a creditor must prove that (1) the debtor engaged in a scheme, (2) to delay, hinder or defraud the creditor, and (3) which involved either the transfer of property without the creditor's consent or court approval or multiple filings." (quoting *In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012)). A creditor seeking stay relief pursuant to section 362(d)(4) "'bears the initial burden to establish a *prima facie* case as to all the elements.'" *In re Lee,* 467 B.R. at 920 (quoting *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009)). That burden is substantial -- especially in light of the drastic relief available to a creditor under section 362(d)(4). *See In re O'Farrill*, 569 B.R. at 591 ("[I]t is not easy to successfully move for relief from the automatic stay under 11

---

[14]   Section 362(b)(20) provides that:

>   (b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay-
>
>   > (20) under [section 362(a)] of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing[.]

11 U.S.C. § 362(b)(20).

13

U.S.C. § 362(d)(4). '[T]he language [in section 362(d)(4)] was deliberately chosen by Congress to impose a substantial burden of proof on secured creditors ....' 3 Collier on Bankruptcy ¶ 362.05[19][a]. Collier notes that requiring a high standard on motions under section 362(d)(4) is consistent with the statute's extreme remedy, which halts the automatic stay from applying to the real property in bankruptcy filings for two years. *Id.*").

It is settled that the Court "may infer an intent to hinder, delay and defraud creditors from the fact of the serial filings alone." *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) (quoting *In re Blair*, No. 09-76150-ast, 2009 WL 5203738 (Bankr. E.D.N.Y. Dec. 21, 2009)). Factors that are important to such a determination include the timing and sequence of the bankruptcy filings, and the extent of the debtor's efforts to prosecute the case. *See In re Montalvo,* 416 B.R. at 385-86; *In re Richmond,* 516 B.R. 229, 235 (Bankr. E.D.N.Y. 2014). Thus, "[w]hen debtors have exhibited a lack of effort in their bankruptcy proceedings and have instead engaged in serial filings to thwart the efforts of secured creditors exercising their rights under state law, courts have found that these serial filings are evidence of bad faith and abuse of the bankruptcy process." *In re McKenzie*, 2019 WL 1750910, at *3 (citation omitted).

The evidence demonstrates that each of the Debtor's multiple bankruptcy petitions was filed in order to delay the Movant's enforcement of the Foreclosure Judgment since she filed each petition either on or just prior to a Law Date or in a way that interfered with the Movant's scheduling a Law Date. The evidence also demonstrates that the Debtor did not prosecute any of the prior petitions. On those facts, there are ample grounds for granting the Movant relief under section 362(d)(4). *See In re McKenzie*, 2019 WL 1750910, at *4 (*in rem* relief warranted where debtor filed four bankruptcies, three of which were "strategically timed days before the foreclosure sale of the [p]roperty."); *In re O'Farrill*, 569 B.R. at 592 (*in rem* relief warranted

14

where debtor had "two prior bankruptcy filings pending within the preceding year, both of which involved the subject [p]roperty, and both of which were dismissed due to the [d]ebtor's failure to attend creditor meetings and/or file the requisite schedules."); *In re Richmond*, 516 B.R. at 234 (filings of debtor's case and that of company of which debtor was sole shareholder were timed to stop foreclosure sale, and therefore court determined that debtor's case was part of a scheme to delay, hinder, or defraud creditors); *In re GEL, LLC*, 495 B.R. 240, 249 (Bankr. E.D.N.Y. 2012) (relief under section 362(d)(4)(B) appropriate where debtors filed successive chapter 11 petitions in two judicial districts, which prevented creditor from executing foreclosure judgment, no plan had been filed, and no plan could be confirmed as a matter of law).

The Debtor does not deny that the timing of the filing of her bankruptcy petitions and her conduct in her cases were calculated to interfere with the Movants' enforcement of the Foreclosure Judgment. Those actions fall squarely within the scope of section 362(d)(4). Nonetheless, the Debtor argues that the Court should deny the Movant's request for relief under that section. She maintains that such relief is not appropriate in her case because every action that she has taken, or not taken, in this and her prior four bankruptcy cases (all but one of which she filed pro se), has been "with the assistance of counsel or under advice (direction) of counsel." Second Response at 8. She asserts that "[t]he debtor did not engage in a scheme to impede the adjudication of this bogus litigation. On the contrary, it has always been a setup by the aforementioned bad actors." *Id*. at 8-9. *See also id*. at 8 (She maintains that two attorneys in Connecticut are responsible for "multiple bankruptcy filings made in my name either by counsel, ghost written by counsel or at the direction of counsel.") In resolving the Stay Motion, the Court accepts those contentions as true.[15] In substance, the Debtor argues that the Movant, not the

---

[15] The Debtor advised that she could bring "10+ witnesses" to support her allegations regarding the actions by the Connecticut counsel, and asked the Court to schedule an evidentiary hearing of the facts around her multiple

15

Debtor, must bear the burden of Debtor's counsels' alleged malfeasance. The Court finds no merit to that assertion. The purpose of section 362(d)(4) "is to prevent repeated bankruptcy filings by persons or entities claiming an interest in real property from frustrating the secured creditor's attempted exercise of rights under state law." *In re Giambrone*, No. 19-40157, 2019 WL 1977321, at * 5 (Bankr. E.D.N.Y. May 2, 2019). If, as Debtor asserts, and this Court assumes solely in resolving the Stay Motion, Connecticut counsel is responsible for the Debtor's actions in her bankruptcy cases, the Debtor can seek redress from Connecticut counsel. Her remedies for her counsels' alleged malfeasance do not include denying the Movant relief under section 362(d)(4), that it is otherwise entitled to receive.

## **Conclusion**

The Stay Motion is granted. The Debtor has no equity in the Property and has failed to adequately protect the Movant's interest in the Property. Accordingly, the Court grants Movant stay relief pursuant to section 362(d)(1) of the Bankruptcy Code. Moreover, the Debtor filed this chapter 7 case as part of a scheme to hinder, delay or defraud her creditors. Pursuant to section 362(d)(4)(B), the Court grants Movant in rem relief permitting it to conduct a foreclosure sale of the Property despite any further bankruptcy filings, assuming that Movant complies with the

---

bankruptcy filings. Second Response at 8. The Court denied that request. Instead of a conducting an evidentiary to test the validity of those allegations, the Court assumes the truth of those allegations.

recording requirements of State law governing recording of notices of interests or liens on real property, and otherwise acts in compliance with state law.[16]

       IT IS SO ORDERED.

Dated: New York, New York
       January 27, 2021

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

[16] Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that an order granting a motion for relief from an automatic stay is stayed until the expiration of 10 days after the order is entered, unless the court orders otherwise. That rule enables a debtor, or other party who opposes relief from the stay pending appeal of an adverse ruling. "[W]ithout a stay pending appeal, appeals from such orders can often become moot if the party granted relief proceeds with a sale or some other action that cannot be easily undone." *In re A Partners, LLC*, 344 B.R. 114, 128 (Bankr. E.D. Cal. 2006) (quoting 9 Collier on Bankruptcy, (15th Ed. Revised), ¶ 4001.04A, pg. 4001–18). The Movant did not address its request for relief from the stay under Rule 4001(a)(3). The Court denies it.